******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TAMARA DORFMAN *v.* JOSCELYN M. SMITH
(SC 20556)

Robinson, C. J., and McDonald, D'Auria,
Ecker and Keller, Js.

*Syllabus*

The plaintiff appealed from that part of the trial court's judgment dismissing
her claims against the defendant insurance company for breach of the
implied covenant of good faith and fair dealing, negligent infliction
of emotional distress, and violation of the Connecticut Unfair Trade
Practices Act (CUTPA) (§ 42-110a et seq.) based on a violation of the
Connecticut Unfair Insurance Practices Act (CUIPA) (§ 38a-815 et seq.).
The plaintiff had been involved in a motor vehicle collision with J, one
of the defendant's insureds. The plaintiff thereafter filed a claim with
the defendant under the underinsured motorist provision of her policy.
The defendant investigated the claim, concluded that J was 100 percent
at fault and made notations of its findings in the claim file. The defendant
then notified the plaintiff that her right to pursue her claim was condi-
tioned on her provision of an affidavit of no excess insurance. The
plaintiff subsequently brought the present action. The defendant hired
attorneys to represent it in connection with the plaintiff's action but
deliberately withheld from them its file notes, which included the
recorded statement and identity of a witness to the collision, even though
the defendant knew that information was necessary for its attorneys to
prepare accurate responses to the plaintiff's complaint and discovery
requests. The defendant pleaded in its answer to the plaintiff's complaint
that it denied or did not have sufficient information to admit the plaintiff's
allegations regarding the cause of the collision and her injuries, and
asserted a special defense of contributory negligence, even though it
knew that it was without a basis in fact. The defendant also provided
false responses to the plaintiff's discovery requests, including that it did
not know of the existence of the witness to the collision or whether any
recorded statements of witnesses existed. In the plaintiff's deposition
of the defendant, the defendant's designee admitted that the defendant
had been aware of the witness to the collision and his recorded statement
but failed to disclose that information in its interrogatory responses.
The designee also indicated that the defendant did not single out the
plaintiff for special or unique treatment when it conditioned her receipt
of underinsured motorist benefits on the provision of an affidavit of no
excess insurance and when it provided false responses to her discovery
requests. The defendant admitted liability with respect to the plaintiff's
breach of contract claim, and the plaintiff was awarded damages in
connection therewith. In dismissing the plaintiff's claims of breach of the
implied covenant of good faith and fair dealing and negligent infliction
of emotional distress, however, the trial court concluded that those
claims were barred by the litigation privilege because they were predi-
cated on communications and statements made in the course of and
related to a judicial proceeding. The court also concluded that the
litigation privilege applied to the plaintiff's allegations regarding the
defendant's purported business practice of responding falsely to discov-
ery requests and dismissed that portion of the plaintiff's CUTPA claim.
The court nevertheless determined that the litigation privilege did not
bar the plaintiff's CUTPA claim to the extent that the plaintiff alleged
that the defendant maintained an improper business practice of condi-
tioning the receipt of underinsured motorist benefits on the provision
of an affidavit of no excess insurance, which purportedly was in violation
of statute (§ 38a-336c (c)). The Appellate Court dismissed the plaintiff's
initial appeal for lack of a final judgment. The plaintiff then amended her
complaint to remove all allegations regarding the defendant's purported
violation of § 38a-336c (c), and the trial court rendered judgment for
the plaintiff on her breach of contract claim and for the defendant on
the plaintiff's extracontractual claims, from which the plaintiff
appealed. *Held*:

1. The trial court correctly determined that the litigation privilege barred

the plaintiff's claim of breach of the implied covenant of good faith and fair dealing: the plaintiff's claim that the defendant systemically abused the judicial process challenged the defendant's conduct in defending against her underinsured motorist claim, rather than the purpose of the underlying judicial proceedings, and her claim was similar to a defamation claim, to which the litigation privilege generally applies, insofar as it was premised on the communication of false statements in pleadings and other documents related to litigation; moreover, the fact that the defendant made the allegedly false communications to its attorneys rather than in court or directly to the court or to an opposing party did not limit the application of the litigation privilege, as the defendant's communications to its attorneys led to misrepresentations and deceptive answers in pleadings and documents that had been filed during the course of litigation; furthermore, although the plaintiff asserted that the bad faith element of a claim of breach of the implied covenant of good faith and fair dealing was equivalent to the malicious intent element of a vexatious litigation claim, to which the litigation privilege generally does not apply, a complete definition of bad faith demonstrated that the plaintiff's good faith and fair dealing claim was more akin to a claim of fraud, to which courts have applied the litigation privilege, the fact that the plaintiff's claim involved dishonesty did not make it akin to a claim of vexatious litigation, and the fact that the plaintiff alleged facts that may have been sufficient to support a vexatious litigation claim did not prevent the litigation privilege from applying to the claim she actually alleged; in addition, to the extent that the plaintiff claimed that the common-law immunity afforded to knowingly false communications made during judicial proceedings was abrogated by statute (§ 52-99) or that public policy disfavored immunity under these circumstances, those claims were unavailing, and there existed safeguards other than civil liability to deter or preclude misconduct or to provide relief from the defendant's alleged misconduct.

2. The trial court properly applied the litigation privilege to the plaintiff's claim of negligent infliction of emotional distress, and, accordingly, that claim was properly dismissed; the plaintiff's allegations in support of that claim incorporated the same allegations she made in support of her claim of breach of the implied covenant of good faith and fair dealing and also were premised on communications that the defendant made during and relevant to the underlying judicial proceeding.

3. The plaintiff's claim that the defendant violated CUTPA based on a violation of CUIPA was barred by the litigation privilege: the litigation privilege bars CUTPA claims, like the claim at issue, premised solely on general allegations of intentionally false discovery responses made by an insurer during and relevant to a judicial proceeding because those claims merely challenge the making of false statements; moreover, there were no allegations in the plaintiff's complaint that the defendant's misconduct occurred with such frequency as to constitute a statutorily (§ 38a-816 (6)) prohibited general business practice, as her allegations regarding that conduct were limited to the defendant's conduct in the present case; furthermore, although the business practice of misrepresenting facts relating to insurance coverage issues is prohibited by § 38a-816 (6), CUIPA did not abrogate absolute immunity for conduct allegedly in violation of that statute, as CUIPA does not impose liability for such conduct by imposing a private right of action but, instead, limits the remedy under that act to administrative action by the Commissioner of Insurance, that remedy was available to the plaintiff, and the legislature could have explicitly abrogated the immunity afforded by the litigation privilege for violations of that statute but did not.

(*One justice concurring in part and dissenting in part*)

Argued April 28, 2021—officially released March 29, 2022

*Procedural History*

Action to recover damages for injuries sustained as a result of the named defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Robaina, J.,* granted the plaintiff's motion to add Liberty Mutual Fire Insurance Company as a defendant; thereafter, the action was withdrawn as against the named

defendant; subsequently, the court, *Noble, J.*, granted the motion filed by the defendant Liberty Mutual Fire Insurance Company to bifurcate the trial as to the second count of the operative complaint; thereafter, the second count was tried to the jury before *Noble, J.*; verdict for the plaintiff; subsequently, the court, *Noble, J.*, granted in part the motion to dismiss the remaining counts filed by the defendant Liberty Mutual Fire Insurance Company; thereafter, the plaintiff withdrew the amended complaint in part, and the court, *Noble, J.*, rendered judgment in part for the plaintiff and in part for the defendant Liberty Mutual Fire Insurance Company, from which the plaintiff appealed. *Affirmed.*

*Proloy K. Das*, with whom were *Leonard M. Isaac, James J. Nugent, Marilyn B. Fagelson* and, on the brief, *Brian Parrott*, for the appellant (plaintiff).

*Philip T. Newbury, Jr.*, for the appellee (defendant Liberty Mutual Fire Insurance Company).

*Opinion*

D'AURIA, J. This appeal requires that we examine the scope of the litigation privilege, which provides absolute immunity from suit, in relation to alleged misconduct by an insurance company. The plaintiff, Tamara Dorfman, appeals from that part of the trial court's judgment dismissing her claims against the defendant Liberty Mutual Fire Insurance Company for breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, and violation of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; based on a violation of the Connecticut Unfair Insurance Practices Act (CUIPA),General Statutes § 38a-815 et seq. The trial court dismissed these claims on the ground that the litigation privilege deprived the court of subject matter jurisdiction over these claims. The plaintiff argues that, because these claims were the functional equivalent of claims for vexatious litigation, the litigation privilege did not apply. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history, as alleged in the complaint, construed in the light most favorable to the plaintiff, and contained in the record, are relevant to our review of these claims. In 2014, the plaintiff was injured when her motor vehicle collided with a vehicle operated by Joscelyn M. Smith, who failed to stop his vehicle at a stop sign. At the time of the collision, the defendant insured the plaintiff under a contract of motor vehicle insurance, which contained a provision for uninsured-underinsured motorist coverage as required by General Statutes § 38a-336. At the time of the collision, Smith was underinsured, and the plaintiff filed a claim with the defendant under the underinsured motorist provision of her insurance contract.

As part of its general business practices, the defendant investigated the collision to determine the cause and legal responsibility. In investigating the plaintiff's claim, the defendant acquired the police report regarding the collision, the plaintiff's recorded statement, and the recorded statement of Birbahadu Guman, a witness to the collision who was not listed in the police report. The report and the statements all noted Smith's failure to stop at the stop sign. Based on this information, two claims specialists employed by the defendant both concluded that Smith was 100 percent liable for the collision and noted their findings in the claim file. The defendant notified the plaintiff that her right to pursue her claim was conditioned on her providing an affidavit of no excess insurance.

To compel payment of the underinsured motorist benefits, the plaintiff brought suit against the defendant, alleging breach of contract.[1] The defendant hired attorneys to represent it in connection with the plaintiff's

claim but deliberately withheld from them its file notes regarding the claim, Guman's name and existence, and Guman's recorded statement, even though it knew this information was necessary for its attorneys to prepare accurate responses to the plaintiff's complaint and discovery requests. In answering the complaint, the defendant pleaded that either it denied or did not have sufficient information to admit the allegations that Smith had failed to stop at a stop sign, causing the collision and the plaintiff's resulting injuries. The defendant also asserted a special defense of contributory negligence, even though it knew this to be false. As a result, the plaintiff alleges that the defendant's answer "falsely responded to . . . [the] allegation[s]" in the complaint, in violation of General Statutes § 52-99.

The plaintiff's attorney then noticed the defendant's deposition to address, in part, the factual basis behind its answer and special defense. The defendant moved for a protective order. Additionally, the defendant provided false responses to the plaintiff's discovery requests, including that it did not know of the existence of any witnesses not listed in the police report and whether any recorded statements existed. In further response to the deposition notice, the defendant's corporate designee testified under oath, admitting that "[t]here was no basis in fact for [the defendant's] accusation that [the plaintiff] was in any way responsible for causing the accident" and that the defendant "had known that there was nothing [the plaintiff] could have done to avoid the accident . . . ." The defendant's designee also admitted that the defendant was aware that Guman had witnessed the accident and made a recorded statement but failed to disclose this information in its interrogatory responses. On the basis of this conduct, the plaintiff alleges that the defendant "used intentional misstatements, intentional misrepresentations, intentionally deceptive answers, and violated established rules of conduct in litigation," and "knowingly and intentionally engaged in dishonest and sinister litigation practices by taking legal positions that were without factual support" to try to prevent the plaintiff from receiving the benefits owed to her under the contract.

The defendant's designee also testified under oath that, in addition to this misconduct, "[the defendant] did not single out [the plaintiff] for special or unique treatment when it conditioned [her] receipt of [underinsured motorist] benefits [on] the provision of an affidavit of no excess insurance but was instead pursuing conduct that Liberty Mutual Corporation routinely takes in its handling of claims from other policyholders as well." Similarly, the defendant's designee "testified under oath that [the defendant] did not single out [the plaintiff] for special or unique treatment when it responded falsely to [her] discovery requests."

Following this deposition, the trial court granted the

plaintiff permission to amend her complaint to include claims for breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, and violation of CUTPA based on a violation of CUIPA. The defendant moved to bifurcate the breach of contract claim from the extracontractual claims, which the trial court granted. Prior to trial on the breach of contract claim, the defendant withdrew its special defense of contributory negligence. At trial on the breach of contract claim, the defendant admitted liability, and a jury awarded the plaintiff $169,928.

After the verdict, the defendant moved to dismiss the remaining claims for lack of subject matter jurisdiction on the ground that the litigation privilege barred those claims. The trial court granted the motion in part and denied it in part. Specifically, as to the plaintiff's claims for breach of the implied covenant of good faith and fair dealing and negligent infliction of emotional distress, the trial court held that, because the claims were predicated on communications and statements filed in the course of and related to a judicial proceeding, the litigation privilege applied. For the same reason, as to the plaintiff's claim for violation of CUTPA based on a violation of CUIPA, the trial court determined that the allegations regarding a business practice of responding falsely to discovery requests also were privileged. The trial court determined, however, that, to the extent the plaintiff's CUTPA claim alleged that the defendant maintained an improper business practice of conditioning receipt of underinsured motorist benefits on the provision of an affidavit of no excess insurance, in violation of General Statutes § 38a-336c (c), the litigation privilege did not bar such a claim because this practice did not occur during the judicial proceedings but occurred before the action commenced. Thus, the trial court granted the motion to dismiss except as to the plaintiff's CUTPA claim to the extent it was premised on a violation of § 38a-336c (c).

The plaintiff appealed from the trial court's decision on the defendant's motion to dismiss, but the Appellate Court dismissed the appeal for lack of a final judgment in light of the continued viability of the CUTPA claim. The plaintiff subsequently requested and received permission to amend her complaint to remove all allegations regarding the alleged violation of § 38a-336c (c). Because the alleged violation of § 38a-336c (c) was the only claim to have survived the motion to dismiss, the trial court determined that the withdrawal of these allegations effectively withdrew this theory of liability. Accordingly, the court rendered judgment in favor of the defendant on all of the plaintiff's extracontractual claims. The plaintiff then appealed to the Appellate Court. The appeal was then transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

## I

Before addressing the applicability of the litigation privilege, "[w]e begin our analysis with a review of [this] doctrine . . . as set forth in *Simms* v. *Seaman*, 308 Conn. 523, 531–40, 69 A.3d 880 (2013). In *Simms*, we noted that the doctrine of absolute immunity originated in response to the need to bar persons accused of crimes from suing their accusers for defamation. . . . The doctrine then developed to encompass and bar defamation claims against all participants in judicial proceedings, including judges, attorneys, *parties*, and witnesses. . . . We further noted that, [l]ike other jurisdictions, Connecticut has long recognized the litigation privilege, and that [t]he general rule is that defamatory words spoken upon an occasion absolutely privileged, though spoken falsely, knowingly, and with express malice, impose no liability for damages recoverable in an action in slander . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 627, 79 A.3d 60 (2013).

Recently, in *Scholz* v. *Epstein*, 341 Conn. 1, 10, 266 A.3d 127 (2021), we recognized the policy rationales underlying this privilege.[2] Although we articulated these rationales in relation to a claim brought against an attorney for communications made during a judicial proceeding, we also have relied on these rationales to apply immunity to claims brought against party opponents and witnesses: "[T]he purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . [T]he possibility of incurring the costs and inconvenience associated with defending a [retaliatory] suit might well deter a citizen with a legitimate grievance from filing a complaint. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine [of absolute immunity] was intended to protect nevertheless faced the threat of suit. In this regard, the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings is the same as the purpose of the sovereign immunity enjoyed by the state. . . . As a result, courts have recognized absolute immunity as a defense in certain retaliatory civil actions in order to remove this disincentive and thus encourage citizens to come forward with complaints or to testify." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 627–28.

We since have recognized that absolute immunity extends to an array of retaliatory civil actions beyond

claims of defamation, including intentional interference with contractual or beneficial relations arising from statements made during a civil action, intentional infliction of emotional distress arising from statements made during judicial proceedings, and fraud against attorneys or party opponents for their actions during litigation. See id., 628; *Tyler* v. *Tatoian*, 164 Conn. App. 82, 92, 137 A.3d 801, cert. denied, 321 Conn. 908, 135 A.3d 710 (2016). This expansion is premised on the rationale that, "because the privilege protects the communication, the nature of the theory [on which the challenge is based] is irrelevant." (Emphasis omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 628.

This court in *Simms*, however, explained that there are limits to the application of the litigation privilege. See *Simms* v. *Seaman*, supra, 308 Conn. 540–41. Specifically, the litigation privilege does not bar claims for abuse of process, vexatious litigation, and malicious prosecution. Id., 540–42. This is because "whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests . . . ." (Citation omitted; internal quotation marks omitted.) Id., 541–42.

Specifically, *Simms* identified the following factors as relevant to any determination of whether policy considerations support applying absolute immunity to any particular cause of action:[3] (1) whether the alleged conduct subverts the underlying purpose of a judicial proceeding in a similar way to how conduct constituting abuse of process and vexatious litigation subverts that underlying purpose; (2) whether the alleged conduct is similar in essential respects to defamatory statements, inasmuch as the privilege bars a defamation action; and (3) whether the alleged conduct may be adequately addressed by other available remedies. Id., 545. Assisting in our evaluation of these factors, to the extent applicable, we have considered as persuasive whether federal courts have protected the alleged conduct pursuant to the litigation privilege. See id., 545–46. These factors and considerations, however, are "simply instructive," and courts must focus on "the issues relevant to the competing interests in each case" in light of the "particular context" of the case.[4] (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 630–31. We are not required to rely exclusively or entirely on these factors, but, instead, they are useful when undertaking a careful balancing of all competing public policies implicated by the specific claim at issue and determining whether affording parties this common-law immunity from this common-law action is warranted.

The plaintiff does not address these factors as to each count the trial court dismissed but, rather, argues generally that counts three, four, and five are not barred

by absolute immunity because all three counts are premised on the defendant's improper use of the courts, all three counts are the functional equivalent of a claim for vexatious litigation, to which absolute immunity does not apply, and statutes and case law establish a public policy against applying the litigation privilege to the alleged conduct.

The applicability of absolute immunity implicates the court's subject matter jurisdiction.[5] E.g., *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 723, 161 A.3d 630 (2017); cf. *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 787, 865 A.2d 1163 (2005) (like colorable claim of sovereign immunity, to protect against threat of lawsuit, colorable claim of absolute immunity based on participation in judicial and quasi-judicial proceedings gives rise to immediately appealable final judgment). "When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss . . . a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 626. Whether absolute immunity applies to the causes of action at issue is a question of law subject to de novo review. See, e.g., *Simms* v. *Seaman*, supra, 308 Conn. 530. This is consistent with our de novo review of a trial court's ultimate legal conclusion and resulting determination of a motion to dismiss. See, e.g., *MacDermid, Inc.* v. *Leonetti*, supra, 626.

We address in turn each of the plaintiff's arguments as to each dismissed count.

## II

The plaintiff's claim for breach of the implied covenant of good faith and fair dealing appears in count three of her complaint. The plaintiff alleged that the defendant falsely responded to the complaint, including by asserting a special defense the defendant knew had no basis in fact, as well as falsely responding to interrogatories and discovery requests. As a result, the defendant "used intentional misstatements, intentional misrepresentations, intentionally deceptive answers, and violated established rules of conduct in litigation," and "knowingly and intentionally engaged in dishonest and sinister litigation practices by taking legal positions that were without factual support in order to further frustrate [the plaintiff's] ability to receive benefits due [to her] under her contract." According to the plaintiff, through this conduct, the defendant (1) engaged in unfair, deceptive, and self-serving conduct, (2) deceitfully and maliciously attributed responsibility for the car crash to the plaintiff, (3) compelled the plaintiff to resort to litigation to obtain her benefits, and (4) filed false and misleading answers in pleadings and discovery responses it knew had no basis in fact to prolong litiga-

tion and to attempt to reduce the plaintiff's insurance benefits.

No appellate authority from this state addresses whether absolute immunity protects against this kind of claim. As a result, we must examine our case law, and the policies underpinning it, to determine whether the plaintiff's good faith and fair dealing claim is more akin to claims of vexatious litigation and abuse of process, to which this court has not afforded absolute immunity, or to claims of fraud and defamation, to which this court has afforded absolute immunity. We conclude that all factors—those considered in *Simms* and those unique to this case—weigh in favor of applying the litigation privilege to bar the plaintiff's claim in the present case.

### A

The plaintiff argues that her claim for breach of the implied covenant of good faith and fair dealing alleges conduct showing that the defendant systemically abused the judicial process and thereby improperly used the courts. "We have . . . recognized a distinction between attempting to impose liability [on] a participant in a judicial proceeding for the words used therein and attempting to impose liability [on] a litigant for his improper use of the judicial system itself." *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 629. "[W]e have refused to apply absolute immunity to causes of action alleging the improper use of the judicial system" but have applied immunity to claims premised on factual allegations that challenge the defendant's conduct in a properly brought judicial proceeding when the cause of action does not require the plaintiff to challenge either the purpose of the underlying litigation or the purpose of a particular judicial procedure. Id. The former involves the improper use of the courts "to accomplish a purpose for which [they were] not designed" and is not protected by the litigation privilege. (Internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 546. The latter does not involve consideration of whether the purpose underlying the litigation was improper and, thus, is entitled to absolute immunity, even if the plaintiff alleges that the defendant's conduct constituted an improper use of the courts. Id., 546–47. That is to say, it is not enough for the plaintiff to allege that the misconduct at issue constituted an improper use of the judicial system, but, rather, the cause of action itself must challenge the *purpose* of the underlying litigation or litigation conduct. See *Tyler* v. *Tatoian*, supra, 164 Conn. App. 93. Additionally, even if the allegations in the complaint are sufficient to support a claim for vexatious litigation or abuse of process but such claims are not raised, these allegations do not remove immunity from a claim that falls within the scope of the litigation privilege. See *Perugini* v. *Giuliano*, 148 Conn. App. 861, 873–74, 89 A.3d 358 (2014).

Thus, in determining whether the plaintiff's claim challenges the purpose of an underlying judicial proceeding, we look at the elements of the claim itself. See *Simms* v. *Seaman*, supra, 308 Conn. 546; see also *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 629, 631. "To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (Internal quotation marks omitted.) *Geysen* v. *Securitas Security Services USA, Inc.*, 322 Conn. 385, 399, 142 A.3d 227 (2016).

The plaintiff's claim does not challenge the purpose of any underlying litigation. Rather, her claim challenges the defendant's conduct in defending against her underinsured motorist claim.[6] A claim of breach of the covenant of good faith and fair dealing in general does not challenge the purpose of an underlying judicial proceeding, like a claim of vexatious litigation or abuse of process. Additionally, claims regarding good faith and fair dealing are distinguishable from other claims that the litigation privilege does not bar. Specifically, in *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 631, we held that the litigation privilege does not apply to claims alleging a violation of General Statutes § 31-290a, which prohibits retaliation against employees for exercising their rights under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. We emphasized in *MacDermid, Inc.*, that, like claims for vexatious litigation and abuse of process, which explicitly hold an individual liable for the use of the judicial process for an illegitimate purpose, "§ 31-290a is designed to prevent, or hold the employer liable for, the improper use of the judicial process for the illegitimate purpose of retaliating against an employee for his exercise of his rights under the act. The illegitimate use of litigation in such a retaliatory manner subverts the purpose of the judicial system and, as a matter of public policy, we will not encourage such conduct by affording it the protection of absolute immunity." Id. The plaintiff's claim in the present case for breach of the covenant of good faith and fair dealing is distinguishable from the claim raised in *MacDermid, Inc.*, in that it is not designed to hold an individual liable for the improper use of the judicial system but, rather, is designed to hold an individual liable for improper conduct in fulfilling contractual obligations.

The fact that the misconduct at issue allegedly affected the underlying judicial proceeding does not alter our analysis. Although the plaintiff's complaint contains allegations that the defendant, through its litigation conduct, improperly used and abused the judicial process, unless the plaintiff's cause of action challenges the purpose of the litigation or litigation procedure,

these allegations do not suffice to establish an improper use of the judicial system. A claim of abuse of process may be premised on the improper use of a particular judicial procedure. But allegations of the improper use of judicial procedure do not satisfy the requirement that the plaintiff's cause of action must itself challenge the purpose of the underlying litigation or litigation procedure. If the concurrence and dissent were correct that the plaintiff's factual allegations were sufficient in the present case to challenge the defendant's use of the courts, any plaintiff could pierce the litigation privilege with any cause of action by merely including allegations that a defendant's conduct constituted an abuse of the judicial system.

As a result, although these allegations do implicate the underlying judicial proceedings, they do not challenge their purpose. Rather than subverting the purpose of the proceedings, the alleged conduct would have rendered the proceeding unfair. As with claims of fraud, although we do not condone such conduct, such unfairness does not bar absolute immunity but, instead, makes clear the importance of the availability of other remedies. See also part II C of this opinion. Thus, the plaintiff's claim for breach of the covenant of good faith and fair dealing does not challenge the purpose of an underlying judicial proceeding.

### B

The plaintiff argues that this claim is not only similar to, but is actually the functional equivalent of, a vexatious litigation claim. In considering the plaintiff's arguments, it is helpful to examine how we analyzed a similar argument in *Simms* in relation to a claim of fraud. In *Simms*, this court compared the elements of fraud against the elements of defamation[7] and vexatious litigation.[8] In doing so, we looked at whether the plaintiff's fraud claim was premised on communication of a false statement, like a defamation claim; see *Simms* v. *Seaman*, supra, 308 Conn. 548; whether embedded in a fraud claim is a balancing test with stringent safeguards that protect against inappropriate retaliatory litigation while incentivizing the reporting of wrongdoing, like a vexatious litigation claim; id., 549; whether, like a defamation claim, the fraud claim in *Simms* was easy to allege but difficult to prove; id.; and whether, like defamation claims, not recognizing the litigation privilege for such actions would open the floodgates to a wave of litigation. Id., 568. In *Simms*, after considering these arguments, we came down firmly on the side of applying the litigation privilege to a fraud claim against an attorney. See id., 568–69. We conclude similarly in the present case that the plaintiff's claim for breach of the implied covenant of good faith and fair dealing has more in common with a defamation claim than with an abuse of process, vexatious litigation, or malicious prosecution claim, therefore militating in favor of applying

the privilege.

The plaintiff's claim for breach of the implied covenant of good faith and fair dealing, like a defamation claim, is premised on the communication of false statements during litigation. See footnote 6 of this opinion. Although the elements of the plaintiff's claim do not specifically mention communications; see part I A of this opinion; we must consider not only the elements of the cause of action but also whether the complaint contains "allegations that a party suffered harm because of a falsehood communicated by the opponent's attorney."[9] *Simms* v. *Seaman*, supra, 308 Conn. 548; see also *Bruno* v. *Travelers Cos.*, supra, 172 Conn. App. 728. The allegations in the plaintiff's complaint make clear that she is challenging the defendant's conduct in defending against the underlying underinsured motorist claim. Specifically, her claim is premised on allegations that the defendant used "intentional misstatements, intentional misrepresentations, [and] intentionally deceptive answers" to "knowingly and intentionally [engage] in dishonest and sinister litigation practices by taking legal positions that were without factual support . . . ." The plaintiff clearly premises her claim in this action on false statements made in pleadings and other documents filed in relation to the breach of contract claim in the underlying action.

This court consistently has held that communications made during and relevant to a judicial proceeding are afforded immunity because "[w]itnesses and parties to judicial proceedings must be permitted to speak freely, without subjecting their statements and intentions to later scrutiny by an indignant jury, if the judicial process is to function." *DeLaurentis* v. *New Haven*, 220 Conn. 225, 264, 597 A.2d 807 (1991). It is well established that "[t]he privilege extends to pleadings and other papers made a part of a judicial or quasi-judicial proceeding," as long as the statements relate sufficiently to issues involved in a proposed or ongoing judicial proceeding; (internal quotation marks omitted) *Hopkins* v. *O'Connor*, 282 Conn. 821, 833, 925 A.2d 1030 (2007); with the test for relevancy described as "generous . . . ." Id., 839. This is true even if the communications are false, extreme, outrageous, or malicious. See id., 838–39; *Petyan* v. *Ellis*, 200 Conn. 243, 254–55, 510 A.2d 1337 (1986).

To the extent the plaintiff's claim is premised on false statements contained in pleadings and documents related to the litigation—such as the allegedly false statements contained in the defendant's answer, special defense, and discovery responses—the privilege clearly applies. The plaintiff makes no argument that these statements were not related to or made in the course of the litigation of her underinsured motorist insurance claim. This is logical given that a defendant's answer, special defense, and discovery responses clearly are relevant to and made during the underlying litigation.

The plaintiff argues, however, that her claim is not premised on false communications but on misconduct—specifically, that the defendant intentionally withheld information from its attorneys and thus knew that the answer, special defense, and discovery responses were false and had no basis in fact. We are not persuaded. The crux of the plaintiff's claim remains false communications, regardless of how the defendant went about making those false communications. For example, immunity would apply if either (1) the defendant's attorneys had made these statements but knew them to be false, or (2) the defendant, in the underlying litigation, had made these same misrepresentations in the pleadings and discovery responses. See *DeLaurentis* v. *New Haven*, supra, 220 Conn. 264 ("a party . . . is not liable for the words used in the pleadings and documents used to prosecute the suit"); *Petyan* v. *Ellis*, supra, 200 Conn. 251–52 ("it applies to statements made in pleadings or other documents prepared in connection with a court proceeding"); *Alexandru* v. *Strong*, 81 Conn. App. 68, 83, 837 A.2d 875 ("The privilege applies . . . to statements made in pleadings or other documents prepared in connection with a court proceeding. . . . That absolute privilege applies regardless of whether the representations at issue could be characterized as false, extreme or outrageous." (Citations omitted; internal quotation marks omitted.)), cert. denied, 268 Conn. 906, 845 A.2d 406 (2004). The fact that the defendant made these misrepresentations to its own attorneys with the intent that the attorneys would then file false pleadings and discovery responses does not change the outcome. The only factual difference in the present case is that the defendant's attorneys served as intermediaries. The fact that the defendant did not makes these false communications in court, or directly to the trial court or an opposing party, does not limit the application of the privilege. See, e.g., *Hopkins* v. *O'Connor*, supra, 282 Conn. 826 ("the absolute privilege that is granted to statements made in furtherance of a judicial proceeding extends to every step of the proceeding until final disposition"); id., 832 ("[t]he scope of privileged communication extends not merely to those made directly to a tribunal, but also to those preparatory communications that may be directed to the goal of the proceeding"); *Kenneson* v. *Eggert*, 196 Conn. App. 773, 783, 230 A.3d 795 (2020) ("[t]here is no requirement under Connecticut jurisprudence that to be considered part of a judicial proceeding, statements must be made in a courtroom or under oath or be contained in a pleading or other documents submitted to the court"). The plaintiff's claim therefore remains premised on the defendant's communications during and relevant to a judicial proceeding.

Our Appellate Court has relied on a similar rationale in applying the litigation privilege to a claim for negligent infliction of emotional distress premised on the

withholding of information. In *Stone* v. *Pattis*, 144 Conn. App. 79, 96, 72 A.3d 1138 (2013), the plaintiffs alleged that the defendants conspired to unduly subpoena witnesses, to conceal from the court the reasons for not calling certain witnesses, and not to disclose certain information. The plaintiffs argued that their claim was premised on deceptive and unfair conduct, not false communications. See id. The Appellate Court disagreed, concluding that the alleged conduct constituted "communications made within the context of a judicial proceeding," even though the false communications were the result of an alleged conspiracy to withhold information. Id., 99.

The present case is similar to *Stone*.[10] The plaintiff's claim of breach of the implied covenant of good faith and fair dealing is premised on the defendant's false communication of information to its attorneys, leading to misrepresentations and deceptive answers filed in pleadings and documents during the course of litigation. That the defendant knew these communications were false and did not take steps to notify its attorneys of the truth does not preclude application of the litigation privilege. The accuracy of a statement is irrelevant to the application of the privilege, even if the defendant knows the statement is false. See *Simms* v. *Seaman*, supra, 308 Conn. 548 (" 'because the privilege protects the communication, the nature of the theory [on which the challenge is based] is irrelevant' " (emphasis omitted)); *Hopkins* v. *O'Connor*, supra, 282 Conn. 838 (if "the communications are uttered or published in the course of judicial proceedings, even if they are published falsely and maliciously, they nevertheless are absolutely privileged provided they are pertinent to the subject of the controversy"). Thus, the plaintiff's claim is premised on false communications like a claim for defamation or fraud.

Additionally, unlike the elements of a claim for vexatious litigation,[11] the elements of a claim for breach of the implied covenant of good faith and fair dealing lack any safeguards that balance the need to protect against inappropriate retaliatory litigation while incentivizing the reporting of wrongdoing. See footnote 9 of this opinion. The elements of the good faith and fair dealing claim at issue require the plaintiff to allege only that the defendant impeded the plaintiff's right to receive benefits that she reasonably expected to receive under the contract and did so in bad faith. See, e.g., *Geysen* v. *Securitas Security Services USA, Inc.*, supra, 322 Conn. 399.

The plaintiff nevertheless argues that this bad faith element is equivalent to the malicious intent element of a vexatious litigation claim, requiring that the defendant acted "primarily for a purpose other than that of bringing an offender to justice"; *Rioux* v. *Barry*, 283 Conn. 338, 347, 927 A.2d 304 (2007); because bad faith is defined

as "more than mere negligence; it involves a dishonest purpose." (Internal quotation marks omitted.) This argument misses the mark because the plaintiff does not fully define "bad faith" in the context of a breach of the implied covenant of good faith and fair dealing claim. This court has explained that, in relation to such a claim, "[b]ad faith in general implies . . . actual or constructive *fraud*, or a design to *mislead or deceive* another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Emphasis added; internal quotation marks omitted.) *Geysen* v. *Securitas Security Services USA, Inc.*, supra, 322 Conn. 399–400.

This more complete definition of bad faith demonstrates that this claim is more akin to a claim of fraud, to which our appellate courts have applied the litigation privilege. See *Simms* v. *Seaman*, supra, 308 Conn. 568–69; *Tyler* v. *Tatoian*, supra, 164 Conn. App. 91–92. If a claim of breach of the implied covenant of good faith and fair dealing may be premised on fraud in relation to a contract, and claims of fraud are afforded absolute immunity, it is logical that the immunity likewise extends to claims of breach of the implied covenant of good faith and fair dealing. As to the other ways to establish the element of bad faith—misleading, deceiving, or acting with a sinister or interested motive—such conduct is similar to the requirement of a fraud claim that the defendant knowingly made an untrue statement. See *Simms* v. *Seaman*, supra, 548. Additionally, the fact that the plaintiff's claim involves dishonesty does not make it akin to a claim of vexatious litigation. As we explained, the nature of the communications, even if dishonest, false, or malicious, does not affect the applicability of the privilege.

Additionally, the elements of the plaintiff's claim do not include safeguards such as those found in a vexatious litigation claim: for example, that the prior action was brought without probable cause or that it terminated in the plaintiff's favor. The plaintiff does not dispute this. Rather, she argues that she alleged sufficient facts to satisfy the stringent vexatious litigation elements, and, thus, as alleged, her claim is equivalent to a claim for vexatious litigation, including all of its safeguards. Specifically, she argues that her allegation that the defendant knew it had no factual basis to allege the special defense of contributory negligence was the equivalent of alleging a lack of probable cause under a vexatious litigation claim. She also argues that the fact that the underlying claim for breach of contract resulted in a verdict in her favor is the equivalent of an underlying proceeding terminating in her favor.

The question, however, is not whether her factual

allegations are similar to the allegations necessary to raise a claim for vexatious litigation but whether the elements of the claim she has alleged provide similar safeguards to balance the competing interests at stake. See *Simms* v. *Seaman*, supra, 308 Conn. 545. The fact that the plaintiff alleged facts that may have been sufficient to support a claim for vexatious litigation does not prevent the litigation privilege from applying to the claim alleged. See *Perugini* v. *Giuliano*, supra, 148 Conn. App. 874–75 (holding that absolute immunity barred claim alleging that defendant attorney engaged in misconduct for purpose of personal financial gain but noting that plaintiff may have been able to, but did not, bring abuse of process action). The plaintiff could have, but did not, advance a claim for vexatious litigation.[12]

The plaintiff further argues that her claim is similar to a claim of vexatious litigation because protection of allegedly dishonest conduct does not further the public policy of candor in judicial proceedings but, rather, violates the state's public policy against untrue allegations or denials in the course of litigation, as evidenced by § 52-99 and case law granting courts the inherent power to sanction parties for litigation misconduct. It is not clear whether the plaintiff is arguing that § 52-99 and our existing case law abrogate the litigation privilege in relation to knowingly false communications or that § 52-99 and our existing case law manifest a public policy against immunity under these circumstances.

To the extent the plaintiff is attempting to argue that § 52-99 abrogates the common-law absolute immunity afforded for knowingly false communications made during and relevant to judicial proceedings, we disagree. Section 52-99 provides in relevant part: "Any allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses, to be taxed by the court, as may have been necessarily incurred by the other party by reason of such untrue pleading . . . ." "In determining whether . . . a statute abrogates or modifies a [common-law] rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. . . . Although the legislature may eliminate a [common-law] right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 843. Section 52-99 contains no such clear and plain expression.

To the extent the plaintiff is arguing that public policy disfavors immunity under these circumstances, we disagree. If anything, as discussed more in part II C of this opinion, § 52-99 demonstrates that other remedies exist

for addressing and disincentivizing the alleged conduct. Additionally, our case law does not support a public policy disfavoring immunity for false pleadings but, to the contrary, manifests, as discussed, a policy in favor of immunizing communications made during and relevant to litigation, even if they are intentionally false and malicious. The cases the plaintiff cites in support of her public policy argument either are vexatious litigation and abuse of process cases—causes of action that were not alleged in the present case—or do not involve the litigation privilege.

Our conclusion does not, as the plaintiff argues, render § 52-99 useless because parties may seek sanctions for litigation misconduct under this statute. Our holding means only that this statute does not support the plaintiff's bringing of a private right of action premised on this conduct. For this reason, there is no merit to the plaintiff's argument that, because § 52-99 and the court's inherent authority authorize the court to sanction parties for litigation misconduct, the court retains subject matter jurisdiction over these claims despite the litigation privilege. The lack of jurisdiction over the present claim did not prevent the parties from pursuing sanctions under § 52-99 or the court's inherent authority.

The plaintiff also fails to recognize that, unlike § 52-99, the purpose of the litigation privilege is not to prohibit dishonesty but to protect against retaliatory claims that are easily alleged but difficult to prove, like claims premised on dishonesty. See, e.g., *Simms* v. *Seaman*, supra, 308 Conn. 539–40, 549. Like a claim of fraud or defamation, which, likewise, involves dishonesty and false communications, it is easy to allege, but more difficult to prove, that a defendant intentionally made misrepresentations and advanced false allegations in pleadings. Although there is some evidence in the present case that the defendant had no basis to assert the special defense of contributory negligence, this kind of evidence—what a party knew and when—is difficult to prove. Withholding immunity as to the claim at issue has the potential to open the floodgates to retaliatory actions every time a plaintiff prevails in an underlying action in which the defendant raised an unsuccessful special defense or made an allegation in a pleading that was at odds with the verdict.

This possibility of retaliatory litigation is made clear by the plaintiff's own argument before the trial court. There, the plaintiff suggested that, in regard to such claims, a hearing is required to determine jurisdiction because these claims are actionable only if there was no basis in fact for the defendant's special defense. Although no hearing was in fact held in the present case, and the plaintiff argues on appeal that the record is sufficient to establish that the defendant had no basis in fact for its special defense based on the deposition of its representative, the plaintiff's argument shows the

weakness of her position before this court. If a claim for breach of the implied covenant of good faith and fair dealing is exempt from immunity only if there was evidentiary support for the allegation that the defendant knew its statement had no basis in fact, and a "jurisdictional" hearing would have to be held to determine this preliminary issue, then individuals will be forced to defend themselves in these hearings against retaliatory claims. Such a procedure is in direct conflict with the purpose of the litigation privilege—to ensure "the proper and efficient administration of justice"; *Hopkins* v. *O'Connor*, supra, 282 Conn. 839; and to protect individuals from "incurring the costs and inconvenience associated with defending a [retaliatory] suit . . . ." (Internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 539.

Accordingly, the plaintiff's claim for breach of the implied covenant of good faith and fair dealing is more akin to a claim of defamation or fraud.

## C

Finally,[13] we consider whether safeguards other than civil liability deter or preclude misconduct or provide relief from the alleged misconduct. See id., 552. This factor is answered by the plaintiff's own arguments, which highlight other such safeguards. First, § 52-99 allows parties to seek monetary sanctions from the trial court for allegations and denials within parties' pleadings made without reasonable cause and found to be untrue. Second, the trial court has the inherent authority to sanction parties for litigation misconduct. See, e.g., *Maris* v. *McGrath*, 269 Conn. 834, 846–48, 850 A.2d 133 (2004); see also *DeLaurentis* v. *New Haven*, supra, 220 Conn. 264 ("[w]hile no civil remedies can guard against lies . . . [p]arties or their counsel who behave outrageously are subject to punishment for contempt of the court" (footnote omitted)); *Jaconski* v. *AMF, Inc.*, 208 Conn. 230, 233, 543 A.2d 728 (1988) ("[a] trial court has the inherent power to provide for the imposition of reasonable sanctions, to compel the observance of its rules"). Further, as we noted in *Simms*, a party may file a motion to open a judgment on the ground that the judgment was obtained by fraud or intentional, material misrepresentation. See *Simms* v. *Seaman*, supra, 308 Conn. 552. In addition, as we noted in *DeLaurentis*, "[p]arties and their counsel who abuse the process by bringing unfounded actions for personal motives are subject to civil liability for vexatious suit or abuse of process." *DeLaurentis* v. *New Haven*, supra, 264. Importantly, in the present case, upon a prior action terminating in her favor, the plaintiff could have brought a lawsuit for vexatious litigation. In fact, that is what she did. These other remedies belie the plaintiff's argument that, if immunity is granted, this court will open the floodgates to insurance companies using the litigation privilege as a loophole to engage in

misconduct and deprive insureds of their contractual benefits.

In sum, because the plaintiff's claim for breach of the implied covenant of good faith and fair dealing is premised on false communications, does not challenge the purpose underlying a judicial proceeding, is more akin to a claim for defamation or fraud, and may be addressed by other remedies, we conclude that the trial court properly applied the litigation privilege.

### III

For the same reasons, we conclude that the trial court properly applied the litigation privilege to the plaintiff's claim of negligent infliction of emotional distress. Connecticut appellate courts consistently have held that claims of negligent infliction of emotional distress[14] premised on communications made during and relevant to an underlying judicial proceeding are afforded absolute immunity. See, e.g., *Bruno* v. *Travelers Cos.*, supra, 172 Conn. App. 719, 727; *Perugini* v. *Giuliano*, supra, 148 Conn. App. 873–74; *Stone* v. *Pattis*, supra, 144 Conn. App. 99–100; see also *Simms* v. *Seaman*, supra, 308 Conn. 569–70 (applying litigation privilege to claim of intentional infliction of emotional distress premised on communication made during and relevant to underlying judicial proceeding).

In the present case, the plaintiff's allegations in support of this claim incorporate the same allegations she made in her claim for breach of the implied covenant of good faith and fair dealing. In light of our holding in *Simms* that that claim is premised on communications made during and relevant to an underlying judicial proceeding, the same analysis and holding apply here. See *Simms* v. *Seaman*, supra, 308 Conn. 570. Accordingly, the trial court properly applied the litigation privilege to the plaintiff's claim for negligent infliction of emotional distress.

### IV

The plaintiff's final count, asserting a violation of CUTPA based on a violation of CUIPA, presents a more difficult issue. To address this issue, it is important first to specify the allegations advanced in support of this count. The plaintiff incorporated by reference the allegations she made in support of her claim for breach of the implied covenant of good faith and fair dealing. Additionally, she alleged that the defendant's designee "testified under oath that [the defendant] did not single out [the plaintiff] for special or unique treatment when it responded falsely to [her] discovery requests."[15] According to the plaintiff, this business practice violates CUIPA in that the defendant (1) misrepresented facts, (2) failed to adopt and implement reasonable standards for the prompt investigation of claims, (3) refused to pay claims without conducting reasonable investigation, (4) did not attempt in good faith to effectuate prompt, fair,

and equitable settlement of claims, and (5) compelled insureds to institute litigation to recover amounts due under an insurance policy.

"CUTPA is, on its face, a remedial statute that broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . To give effect to its provisions, [General Statutes] § 42-110g (a) of [CUTPA] establishes a private cause of action, available to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by [General Statutes §] 42-110b . . . . CUIPA, which specifically prohibits unfair business practices in the insurance industry and defines what constitutes such practices in that industry; see General Statutes § 38a-816; does not authorize a private right of action but, instead, empowers the [insurance] commissioner to enforce its provisions through administrative action. See General Statutes §§ 38a-817 and 38a-818. . . . [T]his court [however, has] determined that individuals may bring an action under CUTPA for violations of CUIPA. In order to sustain a CUIPA cause of action under CUTPA, a plaintiff must allege conduct that is proscribed by CUIPA." (Citation omitted; internal quotation marks omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 317 Conn. 602, 623–24, 119 A.3d 1139 (2015).

Relevant to the present claim, CUIPA prohibits unfair claim settlement practices, which the legislature has defined as "[c]ommitting or performing with such *frequency* as to indicate a general business practice any of the following: (A) [m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue . . . (C) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (D) refusing to pay claims without conducting a reasonable investigation based [on] all available information . . . (F) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (G) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds . . . ." (Emphasis added.) General Statutes § 38a-816 (6). To establish that the improper conduct occurred with "such *frequency* as to indicate a general business practice"; (emphasis added) General Statutes § 38a-816 (6); the plaintiff must allege and establish more than a single act of insurance misconduct. See, e.g., *State* v. *Acordia, Inc.*, 310 Conn. 1, 28, 73 A.3d 711 (2013) ("CUIPA requires 'a showing of more than a single act of insurance misconduct' ").

At oral argument before this court, the plaintiff's appellate counsel, in response to a question, repre-

sented that the plaintiff's complaint contained an allegation that the defendant has a business practice of withholding information from its attorneys to ensure false pleadings, as well as a business practice of alleging contributory negligence as a special defense in response to every claim, even if it knows the allegation is false. The plaintiff argued that this alleged conduct was not premised on false communications during and related to judicial proceedings but constituted unfair conduct that CUIPA and CUTPA were specifically designed to protect against.

If the plaintiff's complaint actually contained such allegations of a general business practice, perhaps this might have been a closer case. But we have scoured the plaintiff's complaint in search of these allegations about the defendant's business practices to no avail. Although there are allegations that, in the plaintiff's particular case, the defendant intentionally concealed information and evidence from its attorneys and alleged the special defense of contributory negligence despite knowing this allegation to be false, there are no allegations in the plaintiff's complaint that this conduct occurred with such frequency as to constitute a general business practice, despite the trial court's having permitted the plaintiff to amend her complaint to include a claimed violation of CUTPA after she learned of the defendant's conduct through discovery. Rather, the plaintiff's allegations regarding this conduct are limited to the defendant's conduct in this case alone.

The plaintiff alleged only that the defendant "did not single [her] out . . . for special or unique treatment when it responded falsely to [her] discovery requests."[16] The plaintiff then alleged that such conduct constituted a general business practice. Even if we assume that these allegations are sufficient to allege that this conduct occurred with such frequency as to indicate a general business practice,[17] the plaintiff's CUTPA claim, as alleged, is barred by the doctrine of absolute immunity under the litigation privilege.

A business practice of responding falsely to discovery requests, to the extent it involves "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue," is prohibited under CUIPA. General Statutes § 38a-816 (6) (A). The parties have not cited any case law—from this court, the federal courts, or sister state courts—that has addressed whether the litigation privilege applies to claims for violating statutes prohibiting unfair insurance practices. In our own research, we have found only one case addressing this issue. The United States District Court for the Eastern District of Pennsylvania, in *Harrison* v. *Nationwide Mutual Fire Ins. Co.*, 580 F. Supp. 133, 136 (E.D. Pa. 1983), and its progeny, held that, when an unfair insurance practices claim is premised on pleadings or documents filed in and relevant to an underlying judicial

proceeding, the conduct is absolutely privileged, even if the statements were made falsely or maliciously.

The plaintiff argues, however, that absolute immunity would undermine the legislative intent of CUIPA, which is to hold insurers accountable for misrepresenting facts relating to coverage issues. In essence, the plaintiff argues that CUIPA abrogates absolute immunity as to the conduct alleged under § 38a-816 (6). Contrary to the plaintiff's argument, CUIPA does not explicitly abrogate absolute immunity. Although § 38a-816 (6) in fact prohibits the business practice of misrepresenting facts relating to coverage issues, CUIPA does not impose liability for this conduct by authorizing a private right of action but, instead, limits the remedy under that act to administrative action by the Commissioner of Insurance. Rather than establishing that immunity should be abrogated, § 38a-816 shows that the legislature prescribed remedies other than civil liability for deterring and curing the alleged conduct, and such remedies are available to the plaintiff in the present case. Additionally, the legislature is aware of both this court's precedent regarding the applicability of the litigation privilege to litigation conduct, as well as the various other tools available to the court to regulate and police litigation misconduct. See, e.g., *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 793 n.21 ("the legislature is presumed to be aware of prior judicial decisions involving common-law rules"). If the legislature thought that the particular litigation conduct at issue—filing false discovery responses—had become such a systemic problem that neither the judiciary nor the Commissioner of Insurance has been able to police it, the legislature would have been explicit in abrogating the immunity afforded by the litigation privilege.

Nevertheless, our case law makes clear that an insurer may be held liable under CUTPA for conduct proscribed by § 38a-816 (6). See *Mead* v. *Burns*, 199 Conn. 651, 663, 509 A.2d 11 (1986) ("it is possible to state a cause of action under CUTPA for a violation of CUIPA"). That does not necessarily mean that the legislature intended to abrogate a party's absolute immunity from CUTPA claims based on a business practice of filing false discovery responses. Although there is minimal case law regarding CUIPA and the litigation privilege, there is a wealth of case law regarding CUTPA and the litigation privilege. Courts consistently have applied the litigation privilege to CUTPA claims premised on false communications made during and relevant to an underlying judicial proceeding. See, e.g., *Simms* v. *Seaman*, supra, 308 Conn. 561–62 (discussing federal case law that consistently has held that CUTPA claims premised on false communications made during and relevant to underlying judicial proceeding are barred by litigation privilege); *Bruno* v. *Travelers Cos.*, supra, 172 Conn. App. 722, 727–29 (CUTPA claim against insurance companies was barred by litigation privilege); *Tyler* v. *Tatoian*,

supra, 164 Conn. App. 86–87, 93–94 (CUTPA claim against attorney for communications made in course of prior judicial proceeding was barred by litigation privilege). These holdings are in line with case law from other jurisdictions, the majority of which have applied the litigation privilege to both common-law and statutory causes of action, including claims for unfair trade practices brought pursuant to the jurisdiction's analogue to CUTPA. See, e.g., *Graham* v. *U.S. Bank, National Assn.*, Docket No. 3:15-cv-0990-AC, 2015 WL 10322087, *16 (D. Or. December 2, 2015) ("Statutory torts are subject to the litigation privilege. Where the Oregon legislature explicitly or implicitly creates a cause of action for violating state law, such a cause of action is a statutory tort [including state law claims for trespass to chattels and under the Oregon Unlawful Trade Practices Act]."); *Trent* v. *Mortgage Electronic Registration Systems, Inc.*, 618 F. Supp. 2d 1356, 1360 (M.D. Fla. 2007) (holding that litigation privilege "precludes communications attached to or made part of a foreclosure complaint from forming the basis of [an unfair trade practices claim]" but does not preclude such a claim premised on presuit communications), aff'd, 288 Fed. Appx. 571 (11th Cir. 2008); *PSN Illinois, Inc.* v. *Ivoclar Vivadent, Inc.*, Docket No. 04 C 7232, 2005 WL 2347209, *6 (N.D. Ill. September 21, 2005) ("the litigation privilege also precludes [the defendant's] deceptive trade practices claim based on statements made in the course of litigation"). But see *Barefield* v. *DPIC Cos.*, 215 W. Va. 544, 554, 600 S.E.2d 256 (2004) ("insurance company's prosecution of a meritless appeal could be used to support a claim for unfair trade practices" (internal quotation marks omitted)).

Under this precedent, the litigation privilege bars CUTPA claims, like the claim at issue, premised solely on general allegations of intentionally false discovery responses because these claims merely challenge the making of false statements. Additionally, there are other remedies available to deter the alleged conduct.[18] See *Tyler* v. *Tatoian*, supra, 164 Conn. App. 93–94. This does not mean, however, that a defendant enjoys absolute immunity from all CUTPA claims under the litigation privilege, even those premised on a violation of CUIPA. Rather, we merely hold that this specific claim—a business practice of filing false discovery responses—is afforded absolute immunity. We recognize that the legislature intended to prohibit certain unfair and deceptive business practices by enacting CUTPA and CUIPA, but the plaintiff has not cited, and we have not discovered, any provision of these statutes that explicitly abrogates the common-law litigation privilege, which, historically, has been applied to false and malicious statements made during and relevant to judicial proceedings. Our holding leaves open the possibility that other CUTPA claims may not be barred by absolute immunity under the litigation privilege. Thus, we con-

clude that the litigation privilege bars the plaintiff's CUTPA-CUIPA claim.

The judgment is affirmed.

In this opinion ROBINSON, C. J., and McDONALD and KELLER, Js., concurred.

[1] In the original complaint, the plaintiff also raised a claim of negligence against Smith but later withdrew it after she settled with Smith for his policy limits. Thus, Liberty Mutual Fire Insurance Company was the only remaining defendant at the time it moved to dismiss the claims at issue—breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, and violation of CUTPA based on a violation of CUIPA. Therefore, we refer to Liberty Mutual Fire Insurance Company as the defendant.

[2] In *Scholz*, we explained that "[t]hree rationales have been articulated in support of the absolute privilege. [*Simms* v. *Seaman*, supra, 308 Conn.] 535. The most important is that the privilege protects the rights of clients who should not be imperiled by subjecting their legal advisors to the constant fear of lawsuits arising out of their conduct in the course of legal representation. . . . Id. [Second, by] affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings [we have recognized] that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . Id., 539. Additionally, the privilege protects access to the courts inasmuch as retaliatory lawsuits [that might] cause the removal of [an] adversary's counsel would compromise the judicial process, and there exist other remedies, such as the court's contempt powers . . . . Id., 535–36." (Internal quotation marks omitted.) *Scholz* v. *Epstein*, supra, 341 Conn. 10.

[3] These factors, to the extent relevant, apply regardless of whether the action is against an attorney, party opponent, or witness. See *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 630–31.

[4] For example, in *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 630–31, this court held that absolute immunity did not bar a claim of employer retaliation. In *MacDermid, Inc.*, the plaintiff employer filed an underlying action for civil theft, fraud, unjust enrichment, and conversion, premised on the defendant employee's conduct in relation to the employee's workers' compensation claim. See id., 622. The defendant employee then filed a counterclaim, alleging that the plaintiff employer violated General Statutes § 31-290a by initiating the underlying action solely in retaliation for his exercise of his rights under the Workers' Compensation Act, General Statutes § 31-275 et seq. Id. The plaintiff subsequently moved to dismiss the defendant's counterclaim, arguing that the court lacked subject matter jurisdiction over that claim because the doctrine of absolute immunity protects the act of filing an action. Id. In holding that the litigation privilege did not apply to a claim alleging a violation of § 31-290a, we noted that the claim did not include the same stringent requirements and balancing of interests as does a claim of vexatious litigation. Id., 632–33. Nevertheless, we determined that the public policy underlying § 31-290a was similar to the public policy underlying a claim of vexatious litigation. See id., 631, 635; see also part II A of this opinion. Additionally, we relied heavily on the fact that, not only would barring immunity not open the floodgates to retaliatory claims against employers, but providing immunity actually would deter employees from exercising their rights under the act. See id., 625 n.7, 635–36.

[5] The parties do not dispute that the doctrine of absolute immunity implicates the trial court's subject matter jurisdiction. The plaintiff, however, argues that, even if absolute immunity applies in the present case, the court retained jurisdiction because it had statutory authority pursuant to § 52-99 and inherent authority to sanction parties for litigation misconduct. See *Maris* v. *McGrath*, 269 Conn. 834, 848, 850 A.2d 133 (2004). We discuss this argument in part II C of this opinion.

[6] The litigation privilege does not apply to conduct not made in the course of a judicial proceeding. See, e.g., *Fiondella* v. *Meriden*, 186 Conn. App. 552, 563, 200 A.3d 196 (2018), cert. denied, 330 Conn. 961, 199 A.3d 20 (2019). As the master of her complaint, the plaintiff never argued to the trial court— and has not argued before this court—that she premised any of her claims on conduct that occurred outside the course of a judicial proceeding. Rather, she consistently has argued that, during the underlying litigation, the defendant made recovery as difficult as possible and improperly used the courts

to avoid paying her the full amount of benefits owed.

[7] "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 547–48.

[8] "Vexatious litigation requires a plaintiff to establish that: (1) the previous lawsuit or action was initiated or procured by the defendant against the plaintiff; (2) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice; (3) the defendant acted without probable cause; and (4) the proceeding terminated in the plaintiff's favor." *Rioux* v. *Barry*, 283 Conn. 338, 347, 927 A.2d 304 (2007).

[9] As discussed in part II A of this opinion, the fact that the plaintiff alleged that the conduct at issue constituted an abuse of the judicial system does not make the claim at issue akin to a claim for abuse of process. Rather, we look to the plaintiff's factual allegations to determine whether the plaintiff's claim is premised on the communication of false statements. See *Simms* v. *Seaman*, supra, 308 Conn. 548; see also *Bruno* v. *Travelers Cos.*, supra, 172 Conn. App. 728.

[10] By contrast, the plaintiff argues that her claim is more analogous to the claim raised in *Fiondella* v. *Meriden*, 186 Conn. App. 552, 555, 200 A.3d 196 (2018), cert. denied, 330 Conn. 961, 199 A.3d 20 (2019), because both alleged intentional concealment and deceitful conduct. We disagree. In *Fiondella*, the defendants successfully brought an action seeking a declaratory judgment that they were the legal owners of a portion of land by operation of the doctrine of adverse possession. Id. The plaintiffs in *Fiondella*, who were not parties in the underlying declaratory judgment action, subsequently brought claims of fraud, slander of title, and civil conspiracy against the defendants, alleging that the defendants intentionally concealed the declaratory judgment action from them, contrary to their property rights and interests. Id., 559–60. The defendants filed a motion to dismiss on the ground of absolute privilege, which the trial court granted. Id., 556. The Appellate Court reversed the trial court's judgment, holding that absolute immunity did not apply to bar the plaintiffs' claims. In so holding, the Appellate Court relied on the following facts: (1) the plaintiffs were not parties to or involved in the underlying declaratory judgment action; (2) the claims were solely premised on conduct, not communications; and (3) the alleged fraud did not occur during the pendency of a judicial proceeding between these parties. See id., 561–62. The Appellate Court emphasized that " '[the privilege] extends to bar claims of fraud against a party opponent.' " Id., 562. The present case clearly involves alleged dishonesty of a party opponent. Additionally, as discussed, the plaintiff's claim is not premised solely on conduct but on false communications.

[11] We note that a lack of stringent policy balancing safeguards is not detrimental to a plaintiff's claim that the litigation privilege does not apply. See footnote 5 of this opinion. For example, claims of employer retaliation under § 31-290a and abuse of process do not have these safeguards, but this court has barred the application of the litigation privilege to those claims because of other policy considerations. See, e.g., *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 633 ("the elements of abuse of process, a tort which also falls outside the scope of absolute immunity, are less stringent than the elements of vexatious litigation"). The plaintiff's claim is distinguishable from claims of abuse of process and employer retaliation, however, because the plaintiff has not suggested any policy considerations that weigh in favor of barring the litigation privilege.

[12] By arguing that her claim is equivalent to a claim of vexatious litigation, the plaintiff appears also to be arguing that she did in fact sufficiently allege a vexatious litigation claim and that this court should not be bound by how she labeled the counts in her complaint. We are not persuaded. Although it is true that, for purposes of a motion to strike, our trial courts consistently have relied on the factual allegations of a count, and not the label placed on the count, in determining whether a claim has been sufficiently alleged; see, e.g., *Penney* v. *Holley*, Docket No. CV-14-6010281-S, 2015 WL 1587981, *2 (Conn. Super. March 13, 2015); the plaintiff's complaint cannot reasonably be interpreted as raising a vexatious litigation claim, especially as, during argument on the motion to dismiss, the plaintiff never argued that she was raising a vexatious litigation claim but, rather, argued only that the claims were similar to a vexatious litigation claim.

[13] The parties have not cited any case law from federal or state courts

concerning the application of the litigation privilege to a similar claim.

[14] The elements of the tort of negligent infliction of emotional distress are: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 444, 815 A.2d 119 (2003).

[15] At the time of the defendant's motion to dismiss, the complaint also alleged that the defendant's representative "testified under oath that [the defendant] did not single out [the plaintiff] for special or unique treatment when it conditioned [her] receipt of [underinsured motorist] benefits [on] the provision of an affidavit of no excess insurance . . . ." The trial court held that absolute immunity did not bar this portion of the plaintiff's CUTPA claim. Because the plaintiff has since withdrawn this portion of the claim, we do not consider it in our analysis.

[16] By contrast, in her second amended complaint, the plaintiff set forth more detailed allegations regarding how the defendant had a business practice of conditioning receipt of underinsured motorist benefits on the provision of an affidavit of no excess insurance. Specifically, in addition to alleging that the defendant "did not single out [her] for special or unique treatment," the plaintiff alleged that, in not doing so, the defendant was "pursuing conduct that [the defendant] routinely takes in its handling of claims from other policyholders as well."

[17] The defendant never filed a motion to strike or argued in the alternative that the plaintiff alleged insufficient frequency to establish a business practice in regard to her allegation that the defendant "did not single [her] out . . . for special or unique treatment when it responded falsely to [her] discovery requests." Accordingly, we do not address this issue.

[18] The concurrence and dissent argues that these other remedies are insufficient, especially in light of the unique nature of insurance companies, which "are effectively in the business of litigation." First, it is worth noting that this court consistently has applied the litigation privilege to attorneys, who, without a doubt, are in the business of litigation. See *Simms* v. *Seaman*, supra, 308 Conn. 540–45; see also *Imbler* v. *Pachtman*, 424 U.S. 409, 424–29, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). Moreover, by enacting CUIPA, the legislature has taken explicit action to regulate insurance companies, including by authorizing the Commissioner of Insurance to take administrative action in response to the conduct alleged while not explicitly creating a private right of action. Thus, we are hard-pressed to conclude that the unique status of insurance companies requires, as a matter of public policy, exempting them from the litigation privilege under these circumstances.